Per Curiam :
On June 8,1960, the court entered judgment for certain of the plaintiffs in this case with the amount of recovery to be determined pursuant to Pule 38(c). 150 Ct. d. 70, cert, denied 364 TJ.S. 892. Mastín G. White, a trial commissioner of this court, on February 12, 1962, filed a supplemental report setting forth additional findings of fact and recommendations for conclusions of law. Exceptions to the commissioner’s supplemental report were taken by the defendant, briefs were filed by both parties and the case was submitted to the court on oral argument by counsel. Since the court is in agreement with the supplemental findings and recommendations of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, judgments will be entered for the individual plaintiffs in the amounts as set forth in the conclusion of law.
It is so ordered.
Davis, Judge, took no part in the consideration and decision of this case.
SUPPLEMENTAL OPINION OP COMMISSIONER
The issue of liability in this case was disposed of by the court in its decision of June 8,1960. At that time, the court held that certain of the plaintiffs were not entitled to recover, *648 and dismissed the petition as to them. The court held that other plaintiffs were entitled to recover on some phases of their claims, and remanded the case to the commissioner for a determination under Eule 38 (c) regarding the respective amounts due such plaintiffs, and others similarly situated, in accordance with the court’s decision. It was necessary to receive additional evidence in the proceedings pursuant to Eule 38 (c).
The plaintiffs were employed by the Department of the Army as civilian bus drivers to provide transportation service for persons working at the military installation formerly known as the White Sands Proving Ground and now known as the White Sands Missile Eange. They filed this action for the recovery of overtime compensation, contending that their regular hours of labor exceeded 40 per week.
The bus runs on which the plaintiffs worked were known as Class A runs or as Class B runs. • The Class A runs provided transportation at a fare of 25 cents per one-way trip for persons who lived in or near Las Cruces or Alamogordo or Hatch, New Mexico, or El Paso, Texas, and who worked at White Sands. A driver having a Class A run drove with' his passengers in the morning, before the beginning of the regular workday, from one of the towns previously mentioned to White Sands; and then in the afternoon, after the end of the regular workday, he returned with his passengers to the particular town. The Class B runs provided free transportation during the workday over specified routes and on the basis of fixed schedules for White Sands personnel needing such service in connection with the performance of their official duties. The various Class B runs were customarily assigned on a weekly basis to bus drivers who also had morning and afternoon Class A assignments to operate buses between the civilian communities previously mentioned and White Sands.
In the initial decision, it was found that the Class B runs were inaugurated by the management at White Sands sometime in 1952, and that, from such time until sometime in 1954, the bus driver assigned to a typical Class B run for a particular week was required each workday during the week *649 to make four round trips — two in the morning and two in the afternoon — over the prescribed route during the interval between his morning Class A trip from a civilian community to White Sands and his evening Class A trip from White Sands back to the civilian community. The court held that on such a workday, the bus driver was entitled to 3% hours’ overtime compensation.
Since the court in its initial decision did not determine exactly when in 1952 the management at White Sands inaugurated the system of having bus drivers operate four morning and afternoon round trips on a Class B run daily, as well as their regular morning and evening Class A trips, or exactly when in 1954 the system of day-long activity was discontinued, it is necessary to make these determinations in the present proceedings under Buie 38(c). The parties have agreed on October 23, 1954, as the date on which the system ended, but they are in disagreement as to when in 1952 the system was inaugurated. There is a conflict in the evidence on the latter point. After weighing all the pertinent evidence in the entire record, it is my opinion that the more persuasive evidence indicates that the system is question was begun as early as March 2,1952.
There is another problem in connection with the computation of the overtime compensation due certain plaintiffs with respect to the operation of both Class B runs and Class A runs during the 1952-1954 period previously mentioned. The court does not have before it any records indicating precisely the particular workdays on which any plaintiff operated four morning and afternoon round trips on a Class B run in addition to his morning and evening Class A trips. The overall evidence indicates that the bus drivers who were involved in the system had both Class B runs and Class A runs for most of the workweeks during the 1952-1954 period. On the other hand, the more persuasive evidence indicates that none of the bus drivers was so engaged every workweek throughout the period. In the first place, allowance must be made for the weeks and days when the various drivers were in a pay status but absent on annual leave or sick leave (although detailed information along this line is not available *650 in the evidence before the court). Also, it has been found by the court that the number of drivers with Class A runs exceeded the number of Class B runs during the 1952-1954 period, which means that not every driver had both a Class B assignment and a Class A assignment for each workweek and workday when he was on duty. When these various factors are taken into account, it is my opinion that it would be fair to conclude generally that the various plaintiffs who qualify for overtime compensation in comiection with the operation of both Class B and Class A runs during the 1952-1954 period worked overtime on 80 percent of the workdays during that period when they were in a pay status.
The views expressed up to this point in the supplemental opinion are reflected in the additional findings 49-60.
Another point on which the court’s decision of June 8, 1960, was favorable to some plaintiffs involved the operation, beginning in 1956, of a mixed Class B and Class A daytime bus run from White Sands to El Paso, and then back to White Sands. The court held that a bus driver who operated that run on any workday, in addition to a regular Class A run, was entitled to compensation for 1 hour of overtime. The parties have reached an agreement, which is incorporated in additional finding 61, respecting the amounts of the overtime compensation due certain plaintiffs in connection with the operation of the mixed Class B and Class A bus run between White Sands and El Paso.
ADDITIONAL FINDINGS OE FACT
49. (a) The plaintiff Floyd D. Campbell (4) was employed as a bus driver at White Sands during the period from August 30, 1953, to October 23, 1954, and thereafter. During the period mentioned, he worked overtime 3% hours per day on 80 percent of the workdays in operating both Class A and Class B runs.
(b) Commencing August 30, 1953, and ending Januairy 2, 1954, Floyd D. Campbell’s base pay was $1.79 per hour and his overtime rate was $2.68 per hour. There is due him as overtime compensation for this period the sum of $675.36.
(c) During the period commencing January 3, 1954, and ending February 27, 1954, Floyd D. Campbell’s base pay *651 was $1.83 per hour and bis overtime rate was $2.74 per hour. There is due him as overtime compensation for this period the sum of $306.88.
(d) Commencing February 28, 1954, and ending October 23, 1954, Floyd D. Campbell’s base pay was $1.93 per hour and his overtime rate was $2.89 per hour. There is due him as overtime compensation for this period the sum of $1,375.64.
50. (a) The plaintiff Howard P. Campbell (5) was employed as a bus driver at White Sands during the period from March 2, 1952, until August 29, 1953. He returned to work as a bus driver at White Sands on April 25, 1954, and he continued working in that capacity through October 23, 1954, and thereafter. During the periods from March 2, 1952, until August 29,1953, and from April 25,1954, through October 23, 1954, he worked overtime 3% hours per day on 80 percent of the workdays in operating both Class A and Class B runs, except for the equivalent of three pay periods between April 25 and October 23, 1954, when he worked on the night shift.
(b) Starting March 2, 1952, and ending October 11,1952, Howard P. Campbell’s base pay was $1.77 per hour and his overtime rate was $2.65 per hour. There is due him as overtime compensation for this period the sum of $1,133.06.
(c) During the period from October 12, 1952, through August 29, 1953, Howard P. Campbell’s base pay was $1.97 per hour and his overtime rate was $2.95 per hour. There is due him as overtime compensation for this period the sum of $1,789.94.
(d) During the period from April 25, 1954, through October 23,1954, Howard P. Campbell’s base pay was $1.83 per hour and his overtime rate was $2.74 per hour. There is due him as overtime compensation for this period the sum of $809.94.
51. (a) The plaintiff Sam Carpió (6) was employed as a bus driver at White Sands during the period from March 2, 1952, through October 23, 1954. During the period mentioned, he worked overtime 3y2 hours per day on 80 percent of the workdays in operating both Class A and Class B runs.
(b) For the period commencing March 2, 1952, and ending October 11, 1952, Sam Carpio’s base pay was $1.77 per *652 hour and his overtime rate was $2.65 per hour. There is due him as overtime compensation for this period the sum of $1,187.20.
(c) For the period commencing October 12,1952, and ending January 2, 1954, Sam Carpio’s base pay was $1.97 per hour and his overtime rate was $2.95 per hour. There is due him as overtime compensation for this period the sum of $2,643.20.
(d) For the period commencing January 23, 1954, and ending April 10, 1954, Sam Carpio’s base pay was $2.03 per hour and his overtime rate was $3.04 per hour. There is due him as overtime compensation for this period the sum of $595.84.
(e) For the period commencing April 11, 1954, and ending October 23, 1954, Sam Carpio’s base pay was $2.12 per hour and his overtime rate was $3.18 per hour. There is due him as overtime compensation for this period the sum of $1,246.56.
52. (a) The plaintiff Calvin G. Chapman (7) was employed as a bus driver at White Sands during the period from March 2,1952, through January 16, 1953. During the period mentioned, he worked overtime 3% hours per day on 80 percent of the workdays in operating both Class A and Class B runs.
(b) For the period commencing March 2, 1952, and ending October 11,1952, Calvin G. Chapman’s base pay was $1.77 per hour and his overtime rate was $2.65 per hour. He was paid $42.48 overtime for the pay period ending April 12, 1952, $15.93 overtime for the pay period ending April 26, 1952, and $21.24 overtime for the pay period ending May 10, 1952. There is due him as overtime compensation for the period from March 2, 1952, to October 11, 1952, the sum of $1,123.48.
(c) For the period commencing October 12,1952, and ending January 16, 1953, Calvin G. Chapman’s base pay was $1.97 per hour and his overtime rate was $2.95 per hour. He was paid $46.46 overtime for the pay period ending November 8,1952, and $5.25 overtime for the pay period ending December 6,1952. There is due him as overtime compensation *653 for the period from October 12, 1952, to January 16, 1953, the sum of $536.83.
53. (a) The plaintiff William Jones (14) was employed as a bus driver at White Sands during the period from October 24, 1952, to October 23,1954, and thereafter. During the period mentioned, he worked overtime Sy2 hours per day on 80 percent of the workdays in operating both Class A and Class B runs.
(b) For the period commencing October 24, 1952, and ending April 25, 1953, William Jones’ base pay was $1.79 per hour and his overtime rate was $2.68 per hour. He was suspended for 3 days during this period of time. He was paid overtime compensation of $8.05 for the pay period ending January 17, 1953. There is due him as overtime compensation for the period from October 24,1952, to April 25, 1953, the sum of $946.57.
(c) For the period commencing April 26, 1953, and ending January 2, 1954, William Jones’ base pay was $1.88 per hour and his overtime rate was $2.82 per hour. He was paid overtime compensation of $5.64 for the pay period ending May 9,1953, overtime compensation of $8.46 for the pay period ending May 23, 1953, overtime compensation of $8.46 for the pay period ending June 6, 1953, overtime compensation of $2.82 for the pay period ending July 18, 1953, and overtime compensation of $9.87 for the pay period ending August 15, 1953. There is due him the sum of $1,393.08 as overtime compensation for the period from April 26, 1953, to January 2,1954.
(d) For the period commencing January 3, 1954, and ending Ocotber 23, 1954, William Jones’ base pay was $1.93 per hour and his overtime rate was $2.89 per hour. He was paid $4.34 as overtime compensation for the pay period ending July 17, 1954, $8.68 as overtime compensation for the pay period ending July 31, 1954, and $5.79 as overtime compensation for the pay period ending September 25, 1954. There is due him as overtime compensation for the period from J anuary 3 to Ocotber 23, 1954, the sum of $1,684.27.
54. (a) The plaintiff Clarence N. Knight (15) was employed as a bus driver at White Sands during the period *654 from April 10, 1954, through October 23, 1954, and thereafter. During the period mentioned, he worked overtime 3y2 hours per day on 80 percent of the workdays in operating both Class A and Class B runs.
(b) For the period commencing April 10, 1954, and ending September 25, 1954, Clarence N. Knight’s base pay was $1.83 per hour and his overtime rate was $2.74 per hour. There is due him as overtime compensation for this period the sum of $997.36.
(c) For the period commencing September 26, 1954, and ending October 23, 1954, Clarence N. Knight’s base pay was $1.93 per hour and his overtime rate was $2.89 per hour. He was paid $1.44 as overtime compensation for the pay period ending October 9, 1954. There is due him as overtime compensation for the period from September 26 to October 23, 1954, the sum of $160.69.
55. (a) The plaintiff Rodolpho Martinez (17) was employed as a bus driver at White Sands for the period from August 2, 1953, through October 23, 1954. During this period, he worked overtime 3% hours per day on 80 percent of the workdays in operating both Class A and Class B runs.
(b) For the period commencing August 2,1953, and ending January 2, 1954, Rodolpho Martinez’ base pay was $1.79 per hour and his overtime rate was $2.68 per hour. There is due him as overtime compensation for this period the sum of $862.96.
(c) For the period commencing January 3, 1954, and ending January 30, 1954, Rodolpho Martinez’ base pay was $1.83 per hour and his overtime rate was $2.74 per hour. There is due him as overtime compensation for this period the sum of $153.44.
(d) For the period commencing January 31, 1954, and ending October 23, 1954, Rodolpho Martinez’ base pay was $1.93 per hour and his overtime rate was $2.89 per hour. He was paid $7.23 as overtime compensation for the pay period ending October 9, 1954. There is due him as overtime compensation for the period from January 31 to October 23,1954, the sum of $1,531.70.
56. (a) The plaintiff George Pointon, Jr., (18) was employed as a bus driver at White Sands for the period com *655 mencing March 2,1952, and ending October 28,1954. During this period, he worked overtime S,y2 hours per day on 80 percent of the workdays in operating both Class A and Class B runs.
(b) For the period commencing March 2,1952, and ending October 11, 1952, George Pointon, Jr.’s base pay was $1.77 per hour and his overtime rate was $2.65 per hour. He was paid $21.24 as overtime compensation for the pay period ending April 12, 1952. There is due him as overtime compensation for the period from March 2 to October 11, 1952, the sum of $1,170.21.
(c) For the period commencing October 12, 1952, and ending January 2, 1954, George Pointon, Jr.’s base pay was $1.97 per hour and his overtime rate was $2.95 per hour. He was paid $8.86 as overtime compensation for the pay period ending June 6,1953. There is due him as overtime compensation for the period from October 12, 1952, to January 2, 1954, the sum of $2,636.11.
(d) For the period commencing January 3, 1954, and ending April 10, 1954, George Pointon, Jr.’s base pay was $2.03 per hour and his overtime rate was $3.04 per hour. There is due him as overtime compensation for this period the sum of $595.84.
(e) For the period commencing April 11,1954, and ending October 23, 1954, George Pointon, Jr.’s base pay was $2.12 per hour and his overtime rate was $3.18 per hour. There is due him as overtime compensation for this period the sum of $1,246.56.
57. (a) The plaintiff John B. Pride (19) was employed as a bus driver at White Sands during the period commencing March 2, 1952, and ending February 28, 1953. During this period, he worked overtime Sy2 hours per day on 80 percent of the workdays in operating both Class A and Class B runs.
(b) For the period commencing March 2,1952, and ending March 15,1952, John B. Pride’s base pay was $1.61 per hour and his overtime rate was $2.41 per hour. There is due him as overtime compensation for this period the sum of $67.48.
(c) For the period commencing March 16,1952, and ending October 11, 1952, John B. Pride’s base pay was $1.69 *656 per hour and his overtime rate was $2.53 per hour. There is due him as overtime compensation for this period $1,062.60.
(d) For the period commencing October 12, 1952, and ending February 28, 1953, John B. Pride’s base pay was $1.88 per hour and his overtime rate was $2.82 per hour. He was paid $49.35 as overtime compensation for the pay period ending November 8, 1952. There is due him for the period from October 12, 1952, to February 28, 1953, the sum of $750.12.
58. (a) The plaintiff Eafael C. Salas (20) was employed as a bus driver at White Sands for the period from March 2, 1952, through October 23, 1954. During this period, he worked overtime 3% hours per day on 80 percent of the workdays in operating both Glass A and Class B runs.
(b) For the period commencing March 2, 1952, and ending October 11, 1952, Rafael 0. Salas’ base pay was $1.69 per hour and his overtime rate was $2.53 per hour. He was paid $40.56 as overtime compensation for the pay period ending April 12, 1952, $15.21 as overtime compensation for the pay period ending April 26, 1952, and $20.28 as overtime compensation for the pay period ending May 10, 1952. There is due him as overtime compensation for the period from March 2 to October 11, 1952, the sum of $1,072.60.
(c) For the period commencing October 12, 1952, and ending January 17,1953, Rafael O. Salas’ base pay was $1.88 per hour and his overtime rate was $2.82 per hour. He was paid $44.36 as overtime compensation for the pay period ending November 8, 1952, and $4.98 as overtime compensation for the pay period ending December 6, 1952. There is due him as overtime compensation for the period from October 12,1952, to January 17, 1953, the sum of $513.25.
(d) For the period commencing January 18, 1953, and ending January 2,1954, Rafael C. Salas’ base pay was $1.97 per hour and Iris overtime rate was $2.95 per hour. He was paid $11.82 as overtime compensation for the pay period ending April 25, 1953, $20.68 as overtime compensation for the pay period ending May 23, 1953, and $23.64 as overtime compensation for the pay period ending July 4,1953. There is due him as overtime compensation for the period from January 18, 1953, to January 2, 1954, the sum of $2,020.09.
*657 (e) For the period commencing January 3, 1954, and ending March 27, 1954, Rafael C. Salas’ base pay was $2.03 per hour and his overtime rate was $3.04 per hour. There is due him as overtime compensation for this period the sum of $510.72.
(f) For the period commencing March 28, 1954, and ending October 23,1954, Rafael C. Salas’ base pay was $2.12 per hour and his overtime rate was $3.18 per hour. He was paid $4.77 as overtime compensation for the pay period ending April 10, 1954, $25.44 as overtime compensation for the pay period ending April 24, 1954, $4.77 as overtime compensation for the pay period ending June 5, 1954, $7.95 as overtime compensation for the pay period ending June 19,1954, $11.13 as overtime compensation for the pay period ending July 7, 1954, $9.54 as overtime compensation for the pay period ending July 31, 1954, $12.72 as overtime compensation for the pay period ending August 14, 1954, $9.54 as overtime compensation for the pay period ending October 9, 1954, and $6.36 as overtime compensation for the pay period ending October 23, 1954. There is due him as overtime compensation for the period from March 28 to October 23,1954, the sum of $1,261.82.
59. (a) The plaintiff James M. Simpson (22) was employed as a bus driver at White Sands for the period from August 30, 1952, through October 23, 1954. During this period, he worked overtime 3% hours per day on 80 percent of the workdays in operating both Class A and Class B runs, except that for the pay period ending September 13, 1952, there should be a deduction of 8 hours from the computation.
(b) For the period commencing August 30,1952, and ending September 13, 1952, James M. Simpson’s base pay was $1.61 per hour and his overtime rate was $2.41 per hour. There is due him as overtime compensation for this period the sum of $60.74.
(c) For the period commencing September 14, 1952, and ending October 11, 1952, James M. Simpson’s base pay was $1.69 per hour and his overtime rate was $2.53 per hour. There is due him as overtime compensation for this period the sum of $141.68.
*658 (d) For tbe period commencing October 12, 1952, and ending March 14, 1958, James M. Simpson’s base pay was $1.79 per hour and bis overtime rate was $2.68 per bour. He was paid $42.26- as overtime compensation for the pay period ending November 8, 1952, and $4.72 as overtime compensation for tbe pay period ending November 22,1952. There is due him as overtime compensation for tbe period from October 12,1952, to March 14,1953, the sum of $780.35.
(e) For tbe period commencing March 15, 1953, and ending January 2,1954, J ames M. Simpson’s base pay was $1.88 per hour and his overtime rate was $2.82 per hour. He was paid $16.92 as overtime compensation for the pay period ending July 4,1953, $8.46 as overtime compensation for the pay period ending August 15, 1953, and $5.64 as overtime compensation for the pay period ending August 29,1953. There is due him as overtime compensation for the period from March 15, 1953, to J anuary 2, 1954, the sum of $1,712.30.
(f) For the period commencing January 3,1954, and ending September 11, 1954, James M. Simpson’s base pay was $1.93 per hour and his overtime rate was $2.89 per hour. He was paid $15.92 as overtime compensation for the pay period ending July 31,1954, and $5.79 as overtime compensation for the pay period ending August 28, 1954. There is due him as overtime compensation for the period from January 3 to September 11,1954, the sum of $1,439.19.
(g) For the period commencing September 12, 1954, and ending October 23, 1954, James M. Simpson’s base pay was $2.03 per hour and his overtime rate was $3.04 per hour. There is due him as overtime compensation for this period the sum of $255.36.
60. (a) The plaintiff Leonard B. Warren (24) was employed as a bus driver at White Sands for the period from March 2, 1952, through October 23,1954. During this period, he worked overtime 3% hours per day on 80 percent of the workdays in operating both Class A and Class B runs.
(b) For the period commencing March 2,1952, and ending October 11, 1952, Leonard B. Warren’s base pay was $1.69 per hour and his overtime rate was $2.53 per hour. He was paid $40.56 as overtime compensation for the pay period ending April 12, 1952, and $20.28 as overtime compensation *659 for the pay period ending May 10, 1952. There is due him as overtime compensation for the period from March 2 to October 11,1952, the sum of $1,084.77.
(c) For the period commencing October 12, 1952, and ending April 11, 1958, Leonard B. Warren’s base pay was $1.88 per hour and his overtime rate was $2.82 per hour. He was paid $44.36 as overtime compensation for the pay period ending November 8, 1952, and $4.98 as overtime compensation for the pay period ending December 6, 1952. There is due him as overtime compensation for the period from October 12,1952, to April 11, 1953, the sum of $987.01.
(d) For the period commencing April 12, 1953, and ending January 2, 1954, Leonard B. Warren’s base pay was $1.97 per hour and his overtime rate was $2.95 per hour. He was paid $20.68 as overtime compensation for the pay period ending May 23, 1953, $11.82 as overtime compensation for the pay period ending July 4,1953, $11.82 as overtime compensation for the pay period ending August 1, 1953, and $8.86 as overtime compensation for the pay period ending August 29, 1953. There is due him as overtime compensation for the period from April 12, 1953, to January 2, 1954, the sum of $1,526.88.
(e) For the period commencing January 3,1954, and ending October 23, 1954, Leonard B. Warren’s base pay was $2.03 per hour and his overtime rate was $3.04 per hour. He was paid $7.61 as overtime compensation for the pay period ending July 17,1954, $6.09 as overtime compensation for the pay period ending July 31,1954, $4.56 as overtime compensation for the pay period ending September 11,1954, and $4.56 as overtime compensation for the pay period ending October 9, 1954. There is due him as overtime compensation for the period from January 3 to October 23, 1954, the sum of $1,769.26.
61. There is due each of the following plaintiffs the amount indicated opposite his name as overtime compensation in connection with the operation of the mixed Class B and Class A bus run between White Sands and El Paso:
Jose V. Baca (1)_$31.65
Silvio J. Benavidez (2)_ 30.00
Floyd D. Campbell (4)_ 33.30
*660 Howard P. Campbell (5)_ 31.65
Sam Carpió (6)- 34.80
Joe L. DeHerrera (8)_ 33.30
Joe B. Gomez (10)_ 30.00
Robert Gonzalez (11)_ 31.65
J. E. Jones (13)_ 31.65
William Jones (14)- 33.30
Clarence N. Knight (15)_ 33.30
Jesus M. Martinez (16)_ 31.65
Rodolpho Martinez (17)_ 33.30
John B. Pride (19)_$34. 80
James M. Simpson (22)_ 33.30
R. H. Solis (23)_ 33.30
Leonard B. Warren (24)_ 34.80
CONCLUSION OP LAW
Upon the foregoing findings of fact and those incorporated in the court’s decision of June 8,1960, all of which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiffs named below are entitled to recover, and it is therefore adjudged and ordered that the plaintiff Jose V. Baca (1) recover of and from the United States the sum of thirty-one dollars and sixty-five cents ($81.65), that the plaintiff Silvio J. Benavidez (2) recover of and from the United States the sum of thirty dollars ($30), that the plaintiff Floyd D. Campbell (4) recover of and from the United States the sum of two thousand three hundred ninety-one dollars and eighteen cents ($2,391.18), that the plaintiff Howard P. Campbell (5) recover of and from the United States the sum of three thousand seven hundred sixty-four dollars and fifty-nine cents ($3,764.59), that the plaintiff Sam Carpió (6) recover of and from the United States the sum of five thousand seven hundred seven dollars and sixty cents ($5,707.60), that the plaintiff Calvin G. Chapman (7) recover of and from the United States the sum of one thousand six hundred sixty dollars and thirty-one cents ($1,660.31), that the plaintiff Joe L. DeHerrera (8) recover of and from the United States the sum of thirty-three dollars and thirty cents ($33.30), that the plaintiff Joe B. Gomez (10) recover of and from the United States the sum of thirty dollars ($30), that the plaintiff Robert Gonzalez (11) recover of and from the United States the *661 sum of thirty-one dollars and sixty-five cents ($31.65), that the plaintiff J. E. Jones (13) recover of and from the United States the sum of thirty-one dollars and sixty-five cents ($31.65), that the plaintiff William Jones (14) recover of and from the United States the sum of four thousand fifty-seven dollars and twenty-two cents ($4,057.22), that the plaintiff Clarence N. Knight (15) recover of and from the United States the sum of one thousand one hundred ninety-one dollars and thirty-five cents ($1,191.35), that the plaintiff Jesus M. Martinez (16) recover of and from the United States the sum of thirty-one dollars and sixty-five cents ($31.65), that the plaintiff Eodolpho Martinez (17) recover of and from the United States the sum of two thousand five hundred eighty-one dollars and forty cents ($2,581.40), that the plaintiff George Pointon, Jr., (18) recover of and from the United States the sum of five thousand six hundred forty-eight dollars and seventy-two cents ($5,648.72), that the plaintiff John B. Pride (19) recover of and from the United States the sum of one thousand nine hundred fifteen dollars ($1,915), that the plaintiff Eafael C. Salas (20) recover of and from the United States the sum of five thousand three hundred seventy-eight dollars and forty-eight cents ($5,378.48), that the plaintiff James M. Simpson (22) recover of and from the United States the sum of four thousand four hundred twenty-two dollars and ninety-two cents ($4,422.92), that the plaintiff E. H. Solis (23) recover of and from the United States the sum of thirty-three dollars and thirty cents ($33.30), and that the plaintiff Leonard B. Warren (24) recover of and from the United States the. sum of five thousand four hundred two dollars and seventy cents ($5,402.70).